```
                 UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF MISSISSIPPI
                       NORTHERN DIVISION
```

LASHONDA JORDAN                                        PLAINTIFF

VS.                              CIVIL ACTION NO. 3:16CV467TSL-RHW

TEDRICK LIDDELL, IN HIS
INDIVIDUAL CAPACITY                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This case arises from plaintiff LaShonda Jordan's arrest on June 20, 2013, by defendant Tedrick Liddell, a Noxubee County deputy sheriff. Plaintiff's complaint contains three counts. Counts one and two are brought under 42 U.S.C. § 1983 and charge, respectively, false arrest and excessive force in violation of plaintiff's Fourth Amendment rights. Count three purports to seek recovery against defendant Liddell on his public official bond. As to counts one and two, Liddell has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis of qualified immunity. He also seeks dismissal of count three on various grounds. Plaintiff Jordan has responded in opposition to the motion as to counts one and two. She does not oppose the motion as to count three.[1] The court, having

---

[1] Plaintiff initially alleged that Travelers Insurance Company issued a public official bond covering Liddell. She has since voluntarily dismissed Travelers, likely because at the time of the incident, Liddell was not covered by any bond. In response to Liddell's motion, Jordan states that just as she is not asserting any claim against Travelers, she also is not asserting a claim against Liddell based on his public official bond since he did not have in place a public official bond at the time of her arrest.

considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part, as set forth herein.

Plaintiff Jordan alleges that on the afternoon of June 20, 2013, she was attacked by a "gang" of girls while she and her husband were leaving a local convenience store. Shortly after this incident, Jordan and several of her family members returned to the store, purportedly to see if the girls were still there so they could try to identify them to law enforcement authorities. Liddell was present at the store when Jordan and her family members arrived. According to Jordan, they reported to Liddell what had transpired, but he refused to take any action, even when they pointed out the girls to him. Later that evening, the same girls, accompanied by several other individuals, appeared at plaintiff's home and began to attack Jordan and her family members. Jordan called 911 and within minutes, Liddell arrived on the scene. Jordan claims that as Liddell approached her, one of the girls came toward Jordan and began threatening her. Liddell, she says, allowed this to occur and took no action against the assailant, whereupon Jordan stated she did not want to talk to him (as she perceived he was friendly with and taking the side of the assailants); she wanted to speak with a different officer instead of Liddell. Jordan asserts that at that point, Liddell grabbed her by both her arms and began pushing her toward her car; he

2

shoved her up against the car, cuffed her with her hands behind her back and put her in his patrol car. She alleges that while she was handcuffed and unsecured, Liddell "drove around Noxubee County in a reckless manner" causing her to "get[] tossed around in the back seat." Eventually, they arrived at the jail. After about thirty minutes, she was released. She was never booked and no charges were brought against her.

In support of his motion, Liddell has presented his own deposition testimony in which he presents a materially different version of events. Liddell claims that when he arrived at Jordan's home, having been dispatched there by the Sheriff's Department, Jordan charged out of her trailer and began repeatedly screaming that she was going to "kill the bitches." He states that his efforts to get her to calm down were to no avail, and that when she persisted in acting in this threatening and belligerent manner, he arrested her for disorderly conduct and failing to obey the lawful command of a law enforcement officer. He handcuffed her, put her in his patrol car and drove directly to the jail. However, she was not charged and was released from custody after the sheriff expressed that he did not want Jordan to lose her nursing certificate on account of being arrested.

Qualified Immunity

"Qualified immunity protects 'government officials performing discretionary functions ... from liability for civil damages

3

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lock v. Torres, No. 16-41405, 2017 WL 2643957, at *3 (5th Cir. June 19, 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Once a defendant asserts a qualified immunity defense, the burden is on the plaintiff to show the defense is inapplicable. Id. (citation omitted). To determine whether a defendant is entitled to summary judgment on the basis of qualified immunity, the court applies a two-step analysis, asking, first, "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights[,]" and if so, then "consider[ing] whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Cantrell v. City of Murphy, 666 F.3d 911, 922 (5th Cir. 2012) (internal quotation marks and citation omitted). "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." Id. (internal quotation marks and citation omitted).

### False Arrest

"The right to be free from arrest without probable cause is a clearly established constitutional right." Lock, 2017 WL 2643957, at *3 (internal quotation marks and citation omitted). Thus, to overcome Liddell's qualified immunity defense, "[Jordan] must show that [Liddell] could not have reasonably believed that he had probable cause to arrest [her] for any crime." O'Dwyer v. Nelson, 310 Fed. Appx. 741, 745 (5th Cir. 2009) (citing Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Resendiz v. Miller, 203 F.3d 902, 903 (5th Cir. 2000) (citation omitted).

In this case, it is clear from the record evidence that there is a genuine issue of material fact regarding the circumstances of Jordan's arrest, and specifically, there is a genuine issue of material fact as to whether a reasonable officer in Liddell's position could have reasonably believed there was probable cause for Jordan's arrest. In direct contradiction to Liddell's version of events, Jordan and one or more of her witnesses have testified that at the time Liddell took Jordan into custody, she was not acting in a threatening or disorderly manner and did not disobey any directive of the officer. According to her witnesses, the

5

only thing she said before he arrested her was that she wished to speak to a different officer.² Accordingly, Liddell's motion for summary judgment on Jordan's false arrest claim will be denied.

Excessive Force

Liddell contends he is entitled to qualified immunity with respect to Jordan's § 1983 excessive force claim because the amount of force he used was objectively reasonable in light of her lawful arrest and conduct and because her injuries were *de minimis*. The Fourth Amendment's protection against unreasonable search and seizure includes the right to be free from the use of excessive force by law enforcement. Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996). At the time of Jordan's arrest, this right was clearly established, and it was also clearly established that "the amount of force that an officer could use depended on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009).³ In addition, it was clearly

---

² Liddell points out in his rebuttal brief that Jordan did not specifically testify in her deposition that she did not say she was going to "kill the bitches." However, that was implicit in her testimony. Moreover, other witnesses testified that Jordan said nothing other than that she did not want to talk to Liddell but wanted to speak to a different officer.

³ Plaintiff asserts that since no probable cause existed to support her arrest, then *any* resulting use of force was inherently unreasonable and any injury she sustained was unjustified and actionable. However, the Fifth Circuit has made

6

established that while a plaintiff need not demonstrate a "significant injury" to establish her excessive force claim, her "injury must be more than *de minimis*." Id. (internal quotation marks and citations omitted). See Flores v. City of Palacios, 381 F.3d 391, 400 n.7 (5th Cir. 2004) (noting that "[t]he extent of an injury is an element of an excessive force claim that must be clearly established in the second prong of the qualified immunity analysis").[4]

In the case at bar, the only injury Jordan has asserted is bruising on her arm and anxiety, for which she did not seek medical treatment for nearly three weeks. This is appropriately categorized as *de minimis* and thus insufficient to support Jordan's claim for excessive force. See Lockett v. New Orleans City, 607 F.3d 992, 999 (5th Cir. 2010) (bruising from overly tight handcuffs a *de minimis* injury); Glenn v. City of Tyler, 242 F.3d 307. 314 (5th Cir. 2007) (evidence of officers "twisting [the

---

clear that a plaintiff's "excessive force claim is separate and distinct from her unlawful arrest claim, and [the court] must therefore analyze the excessive force claim without regard to whether the arrest itself was justified." Freeman v. Gore, 483 F.3d 404, 416–17 (5th Cir. 2007) (fact that arrest was unlawful on facts alleged does not mean that any force used by the deputies to effectuate the arrest was necessarily excessive) (citations omitted).

[4] Plaintiff inexplicably argues both that Liddell's "assertion of a *de minimis* injury standard for her excessive force claim is contrary to precedent" and that "[t]o support a claim for excessive force, 'plaintiff's asserted injury must be more than *de minimis*.' Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2004)." The latter is the correct statement.

plaintiff's] arms behind her back while handcuffing her, 'jerk[ing] her all over the carport,' and apply[ing] the handcuffs too tightly" insufficient to make out claim where only bruising resulted); Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007) ("[m]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."); Barnes v. Corr. Corp. of Am., No. CIV.A 5:09CV178-MTP, 2010 WL 2090106, at *2 (S.D. Miss. May 21, 2010) (sore shoulder, anxiety and a bruised ego are clearly *de minimis* injury which did not amount to constitutional violation).

Conclusion

Based on the foregoing, it is ordered that Liddell's motion for summary judgment is granted as to plaintiff's claims for excessive force and her state law claim on Liddell's alleged public official bond. It is ordered that the motion is denied as to her claim for false arrest.

SO ORDERED this 13th day of October, 2017.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE